FILED
2008 Jul-29  PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

STACY ELAINE MURRAY,            ]
                                ]
    Plaintiff,              ]
                                ]
    vs.                     ]   3:07-CV-0824-LSC
                                ]
MICHAEL J. ASTRUE,              ]
Commissioner,                   ]
Social Security Administration, ]
                                ]
    Defendant.              ]

## MEMORANDUM OF OPINION

I.   Introduction.

The plaintiff, Stacy Elaine Murray, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. Murray ("Plaintiff") timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was twenty-eight years old at the time of the Administrative Law Judge's ("ALJ") decision, and she has a ninth grade education with no

GED or vocational training. (Tr. at 22-23, 335.) Her past work experiences include employment as a fast food worker, waitress, and sewing machine operator. *Id.* at 22, 40, 72, 79-87. Plaintiff claims that she became disabled on February 15, 2004, due to scoliosis, low back pain, and depression. *Id.* at 71-78, 101-24, 128-29, 329.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the

analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do

other work, the claimant is not disabled. *Id*.

Applying the sequential evaluation process, the ALJ found that Plaintiff meets the nondisability requirements for a period of disability and DIB. (Tr. at 16, 18.) The ALJ also found that Plaintiff was only insured through June 30, 2005, requiring her to establish disability on or prior to that date. *Id*. He further determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. *Id*. at 18. According to the ALJ, Plaintiff's scoliosis and status post diagnostic laparoscopy, right ovarian cystectomy, and left fimbrioplasty are considered "severe" based on the requirements set forth in the regulations. *Id*. at 19. However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 20. The ALJ did not find Plaintiff's allegations to be totally credible, and he determined that she has the following residual functional capacity: limited range of light work activity with a sit-stand option; she is able to occasionally lift and carry twenty pounds; she is able to stand for thirty to thirty-five minutes at a time, walk for twenty minutes at a time, and sit for forty to forty-five minutes at a time. *Id*.

According to the ALJ, Ms. Davis is unable to perform any of her past relevant work, she is a "younger individual," and she has a "limited education," as those terms are defined by the regulations.  *Id.* at 22.  He determined that "transferability of job skills is not material to the determination of disability" in this case.  *Id.*  The ALJ found that Ms. Davis has the residual functional capacity to perform a significant range of light to sedentary work.  *Id.* at 23.  Even though Plaintiff cannot perform the full range of work in those levels, the ALJ used the vocational expert's ("VE") testimony as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as counter clerk, labeler, nut/bolt assembler, appointment clerk, order clerk (food), and final assembler.  *Id.*  The ALJ concluded his findings by stating that Plaintiff was not "under a 'disability,' as defined in the Social Security Act, from February 15, 2004, through the date of this decision."  *Id.*

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support

the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id*. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the

reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Plaintiff alleges that the ALJ's decision should be reversed and/or remanded for one reason. (Doc. 7 at 5-6.) Plaintiff argues that the ALJ failed to properly consider her excessive absenteeism when he found that there are a significant number of jobs existing in the national economy that Plaintiff can perform. *Id.* at 6.

The Commissioner has the burden of proving that there is other work in the national economy that the claimant can perform. *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). But the hypothetical need only include limitations supported by the record. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). An ALJ's failure to include claimant's severe

impairments in a hypothetical question to a VE is reversible error where the ALJ relied on that VE's testimony to make a disability determination. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).

Plaintiff contends that the ALJ should have included excessive absenteeism in his hypothetical question posed to the VE at the hearing. (Doc. 7 at 9.) Plaintiff further argues that, in accordance with the VE's testimony, she was precluded from holding gainful employment because of thirty-seven medical treatments between January 2004 and January 2006. *Id*. at 6-8. The ALJ asked the VE about the impact of absenteeism on employment during his hypothetical questioning:

> Q: Okay. How many days in a typical month could an individual miss work and still maintain a regular employment?
>
> A: Absenteeism that occurs at a rate or frequency of two or more days a month over an extended period, over several months, would preclude the ability to maintain gainful employment.

*Id*. at 350.

When questioned by Plaintiff's counsel, however, the VE testified as follows:

Q: [I]n unskilled entry level work is there any tolerance for absenteeism in the first three months of employment?

A: Generally speaking, again, an individual could miss one day with an excused absence each month for the first three months, I think that's going to be acceptable. Again, two or more days, that's going to preclude the employment.

Q: If the judge to review the information presented in this case and conclude that over the period that we're claiming disability, approximately twenty-four months, this individual missed 37 days, just for doctors' appointments, hospital ER visits and so forth, and that this was spread out over the period of time, I'm not going to say in equal monthly installments, but it was spread out over the entire period, would that be excessive absenteeism or not?

A: Thirty-seven days over twenty-four months is actually less than the, then the two days a month. However, it would be considered excessive absenteeism.

Q: That's because of the continuous nature of it? The fact that it's month after month after month?

A: Yes. There are so many days involved in that two years.

(Tr. at 351-52.)

Plaintiff had thirty-six medical visits during the relevant time period.[1]

---

[1] Although Plaintiff included a January 2004 visit to Russellville Hospital in her list of medical visits, that visit was before the alleged onset date of February 15. *Id.* at 211-14.

*Id.* at 211-14. Applying the VE's rule, there were only two periods of several consecutive months with two or more absences per month: February to April 2004 and August to November 2005. *Id.* at 202-06, 207-10, 215-38, 257-60, 313-18. Plaintiff neither alleges that her visits required full-day treatments nor that her appointments had to coincide with her work schedule. At any rate, the ALJ specifically asked the VE about excessive absenteeism. There is substantial evidence to show that the ALJ considered excessive absenteeism in his disability evaluation.

IV. Conclusion.

Upon review of the administrative record, and considering all of Ms. Murray's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 29th day of July 2008.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671